IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

UNITED STATES OF AMERICA

vs.

Docket No. 2:06CR285-WKW-001

DARRYL ANDRE KENNEDY

## MOTION FOR DOWNWARD DEPARTURE

Comes now before the Court the Defendant (hereinafter, Mr. Kennedy") and submits by and through his attorney his motion for a downward departure and as grounds therefor this movant avers the following:

1. That in paragraph 54 of the Presentence Report the Probation Officer noted that:

" Kennedy is 5'11" tall and weighs approximately 170 pounds. He has surgical scars on his chest as a result of prior surgeries. The defendant is in poor health as a result of a gunshot wound to the abdomen sustained in 1996 at his home located on Mooreland Drive. As a result of the shooting, the blood supply to the defendant's intestines was impacted and a substantial portion of his intestines were removed. According to the defendant's attending physician, Douglas C. Heimburger, M.D., UAB Department of Nutrition Services and Medicine, this resulted in "short bowel syndrome, which entails progressive loss of calories, protein, fluids, minerals, and vitamins," and an inability to maintain body weight and strength. The defendant has been dependent on TPN, intravenous feedings, since 1996. The physician reported two prior attempts to discontinue the HPN; however, both attempts were unsuccessful and on each occasion he lost weight and critical minerals. The defendant is fed through a catheter which presents a risk of serious infection. The defendant reported his most recent hospitalization at

Jackson Hospital in 2006, due to infection. The defendant was diagnosed with Osteoporosis in or about 2004, for which is takes high doses of Vitamin D and Calcium. The defendant can perform no heavy lifting. Medical records through March 2005 are available for review."

2. That Mr. Kennedy is in poor health as a result of his past medical history and incarceration in this matter could be life threatening.

3. That pursuant to U.S.S.G. §5H1.4, while physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted, an extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

4. That 18 U.S.C.A. § 3553(f) provides defendants with a possible reduction in the minimal federal sentencing laws. Section 3552(f) allows courts to set aside the minimum sentence, if a defendant can establish five criteria: (1) defendant has only one criminal history point; (2) defendant neither used nor threatened violence; (3) the offense did not result in serious bodily injury or death; (4) defendant was not an organizer or leader of the crime; and (5) no later than the time of the sentencing hearing, the defendant truthfully provided the government with all the information in defendant's possession regarding the offense.

5. That the United States Guideline § 5H1.4. provides that:

"Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

6. That the condition of Mr. Kennedy's health would warrant a downward departure in that Mr. Kennedy has to be fed through a catheter which presents a risk of serious infection and has a colostomy (See attached Exhibit).

7. Mr. Kennedy respectfully ask this Court to consider *U.S. v. Mason*, 966 F.2d 1488, (C.A.D.C.1992) rehearing denied, certiorari denied 113 S.Ct. 829, 506 U.S. 1040, 121 L.Ed.2d 699. where the Court held that the defendant's injury as result of being shot by gunman can be considered in sentencing defendant at low end of guideline range for possession of crack cocaine which was found during consent search of defendant's apartment following the shooting. In *U.S. v. Lacy*, 99 F.Supp.2d 108, (D.Mass.2000), the Court held that bullet in defendant's brain, which could become dislodged at any time, and which caused him to have grand mal seizures, etc., represented the kind of extraordinary physical circumstance for which a downward departure under Sentencing Guidelines was justified.

8. In this case Mr. Kennedy submit that his medical condition represents the kind of extraordinary physical circumstance for which a downward departure under the Sentencing Guidelines is justified.

Deborah Moore Nickson
Attorney for the Defendant
2820 Fairlane Drive Suite A-10i
Montgomery, Alabama 36116
(334)213-1233

CERTIFICATE OF SERVICE

    I, Deborah M. Nickson, hereby certify that on November 1, 2007, a copy of the foregoing objection was delivered via the United States Mail, to the following:

Assistant U. S. Attorney
Kent B. Brunson
Post Office Box 197
Montgomery, Alabama 36101

/s/ Deborah M. Nickson
Deborah M. Nickson



**THE UNIVERSITY OF ALABAMA AT BIRMINGHAM**

*Departments of Nutrition Sciences and Medicine*

15 February, 2007

To Whom It May Concern
c/o Ms. Deborah Nickson
100 Commerce St., Suite 900
Montgomery, AL 36104
Phone 334-213-1234

Dear sirs/madams,

    I, Douglas C. Heimburger, M.D., am a Professor in the Departments of Nutrition Sciences and Medicine at the University of Alabama at Birmingham, where I have been a faculty member since 1982. I have provided medical care for Darryl Kennedy since the mid-1990s, when he was injured by a gunshot wound in a robbery attempt. The gunshot severed the main artery that supplies blood to the intestines, resulting in the death and subsequent removal of a substantial portion of his intestines and creating a condition called Short Bowel Syndrome (SBS). Because I am a Physician Nutrition Specialist®, I specialize in the care of patients with SBS, and Darryl was referred to me. For nearly the entire time since his intestinal resection, he has required home parenteral nutrition (HPN), or intravenous feeding, to sustain his life. When he is being treated with HPN, the UAB Home Infusion Therapy Service supplies Darryl with large bags filled with intravenous nutrition and all the supplies required to infuse it. The management of HPN is very complicated, and requires frequent blood tests to insure that his nutritional status is adequately maintained. Laboratories typically fax the results of the blood tests to my group and to the Home Infusion Therapy Service, whereupon we adjust the content of his HPN bags. I must also evaluate him periodically in UAB Health System clinics.

    Darryl's HPN has been complicated by periodic blood stream infections, for which the presence of a long-term indwelling catheter is required. Because of this, we have periodically discontinued his HPN and removed his catheter. In Darryl, discontinuation of HPN always results in loss of weight and significant difficulty maintaining normal blood levels of nutrients, particularly potassium, phosphorus, and magnesium. His life cannot be sustained without HPN.

    Darryl Kennedy's medical management is very complex and requires constant vigilance, frequent blood tests, frequent communication with him, and monthly clinic visits.

Sincerely,

*[signature]*

Douglas C. Heimburger, M.D., M.S., FACP
Professor

---

**Division of Clinical Nutrition and Dietetics**
439 Webb Nutrition Sciences Building
1675 University Boulevard
205.934.5564
Fax 205.934.7050
dheimbur@uab.edu

The University of
Alabama at Birmingham
Mailing address:
WEBB 439
1530 3RD AVE S
BIRMINGHAM, AL 35294-3360



DEFENDANT'S EXHIBIT 1